UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LINDA HUTSON-GRZELKA,

      Plaintiff,

                                              CASE NO. 04-CV-73960-DT
v.                                JUDGE NANCY G. EDMUNDS
                                              MAGISTRATE JUDGE PAUL KOMIVES

DAIMLERCHRYSLER-UAW PENSION
BOARD OF ADMINISTRATORS,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
       A.    *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
       B.    *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       C.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
       D.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
       E.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

\*     \*     \*     \*     \*

I.    RECOMMENDATION: The Court should grant defendant's motion for summary judgment, captioned as a motion to affirm the administrator's decision.

II.   REPORT:

A.    *Procedural Background*

Plaintiff Linda Hutson-Grzelka commenced this action on October 8, 2004, pursuant to section 502 of the Employee Retirement Income Security Act, 29 U.S.C. § 1132. Plaintiff alleges that defendant, DaimlerChrysler-UAW Pension Board of Administration, breached its fiduciary duties and wrongfully denied her benefits. On March 28, 2005, defendant filed this motion for summary judgment, styled as a motion to affirm the administrator's decision. Defendant argues that

its decision was not arbitrary and capricious, and therefore that it must be affirmed. Plaintiff filed a response on May 11, 2005, and defendant filed a reply on May 20, 2005.

B.     *Factual Background*

Plaintiff seeks to recover permanent total disability retirement benefits under the 1999 Pension Agreement between DaimlerChrysler and the United Auto Workers (UAW) ("the Plan"). Under the Plan,

> An employee shall be deemed to be permanently and totally disabled only if he is not engaged in regular employment or occupation for remuneration or profit and the Board of Administration shall find, on the basis of medical evidence
> (a) that he has been totally disabled by bodily injury or disease so as to be prevented from engaging in regular employment or occupation with the Corporation at the plant or plants where he has seniority for remuneration or profit, and
> (b) that his total disability will be permanent and continuous during the remainder of his life[.]

Def.'s Br., Ex. C, 1999 Pension Agreement, § (8), at 22 [hereinafter "Pension Agreement"]. Plaintiff last worked at DaimlerChrysler as a Technical Specialist in the company's call center. *See* Def.'s Br., Ex. A. Plaintiff took a medical leave of absence on January 27, 2003, due to chronic back pain. She currently receives extended disability benefits under the DaimlerChrysler-UAW Life, Disability, and Health Care Benefits Program. *See id*., Ex. B.

On January 23, 2003, Dr. Jeff Parker, M.D., prepared a report following his examination of plaintiff. Dr. Parker diagnosed plaintiff as suffering from obesity, depression, status post lumbar laminectomy, and lumbar sprain. He opined that plaintiff suffers from chronic low back pain, but that "much of her history and pain complaints are clouded with overlying problems with depression and family problems." Plaintiff indicated that she could return to work, and Dr. Parker agreed, with her work restricted to no heavy lifting, pushing, stooping, or pulling, and limited to a six hour work day. *See* Def.'s Br., Administrative Record, Tab 1 [hereinafter "AR, Tab x"].

On April 15, 2003, plaintiff submitted to an independent medical examination by Dr. Michael Raad, D.O. Dr. Raad diagnosed plaintiff as suffering from an exacerbation of low back pain related to a herniated disc at L4-L5. Dr. Raad opined that plaintiff was "not able to return to work and . . . should be reevaluated in one month." AR, Tab 2.

Plaintiff applied for Permanent Total Disability (PTD) Retirement on June 9, 2003. In support of this application plaintiff submitted the statement of Dr. Shukla Suchak, M.D., who examined plaintiff on June 2, 2003. Dr. Suchak diagnosed plaintiff as suffering from spinal stenosis in the lumbar region and lumbar disc displacement. Dr. Suchak opined that plaintiff's condition would "probably not" respond to treatment, in light of the inability of her other treatments–including physical therapy, rehabilitation, psychiatric treatment, and nerve root injections–to ease her pain. In Dr. Suchak's opinion, plainitff is not capable of any work because of her inability to sit, stand, walk or lie down for more than a few minutes at a time. Addressing specifically the Plan's definition of PTD, Dr. Suchak opined that plaintiff was "most likely" disabled under the Plan definition, elaborating that it is "still in the hands of pain clinic. Hopefully she can become a little more functional but I doubt she will be able to do any meaningful level of work." AR, Tab 3.

Plaintiff also submitted in support of her application the report of Dr. Clare Johnson, M.D., who examined plaintiff on June 20, 2003. Dr. Johnson diagnosed major depression, possible lumbar disc herniation and radiculopathy, and possible spinal stenosis. Contrary to Dr. Suchak, Dr. Johnson opined that plaintiff's condition would likely respond to treatment, stating "[i]f she gets appropriate psychiatric treatment and better back pain care management, she should improve." Dr. Johnson also opined that plaintiff was not capable of performing any work, because "[i]n her current depressed state of mind and with apparent excessive use of meds. for her back pain she is too somnolent and

depressed to engage in work." Nevertheless, Dr. Johnson also opined that plaintiff was not permanently and totally disabled under the Plan definition because with appropriate treatment, and in particular compliance with her psychiatric treatment, plaintiff's condition should improve. AR, Tab 4.

On July 30, 2003, plaintiff was examined by Dr. Elizabeth Edmond, M.D. Dr. Edmond conducted a physical examination of plaintiff and reviewed the medical records submitted by plaintiff in support of her application. She noted that, on examination, plaintiff's reflexes were normal, there was no muscle weakness or atrophy, and plaintiff did not complain of back or leg pain when seated with a 90 degree angle at the hips. Dr. Edmond opined that "[i]t is apparent that her mental status is interfering with her physical treatment program." Noting that plaintiff's physical treatment program was on-going, including consideration of spinal cord stimulation and fusion surgery, Dr. Edmond concluded that plaintiff was not permanently and totally disabled. Rather, she "anticipate[d] that with her physical program, plus psychiatric treatment, there should be some improvement as has been the goal, particularly as relates to the physical problem." AR, Tab 7.

On August 25, 2003, defendant informed plaintiff that, "[o]n the basis of the medical evidence submitted, the Committee has determined that you are not permanently and totally disabled as required under Section (8) of the Pension Plan." AR, Tab 8. Plaintiff filed an appeal on October 21, 2003. AR, Tab 9. In support of her appeal, plaintiff submitted two additional physician statements. First, Dr. Syed Enam examined plaintiff on September 16, 2003. Dr. Enam diagnosed lumbar degenerative disc disease. Dr. Enam opined that plaintiff's condition would likely respond to treatment, but that "this will not completely resolve her symptoms." Dr. Enam also noted that plaintiff is not capable of performing any work, because she cannot bend, lift, sit, or stand for

prolonged periods. Dr. Enam opined that plaintiff was permanently and totally disabled under the Plan definition, explaining that although plaintiff's surgery might "help some with pain control, her physical activity will always be significantly limited." AR, Tab 10.

Second, Dr. Hermino Perez, M.D., treated plaintiff from June 19 through October 13, 2003. Dr. Perez opined that plaintiff's condition was unlikely to respond to treatment, because it required surgery. He also stated that plaintiff was not capable of engaging in any work, because she required a wheelchair. Finally, he concluded that plaintiff was permanently and totally disabled under the Plan definition, based on the neurosurgeon's (Dr. Enam's) report and the fact that she "just had major back surgery." AR, Tab 11.

Plaintiff's medical evidence was reviewed by Dr. Teresa Bartlett, a company physician who had not been involved in the initial review decision. Based on Dr. Bartlett's review, defendant denied plaintiff's application for PTD Retirement on November 24, 2003. AR, Tab 12.

C.   *Legal Standard*

Plaintiff seeks to recover benefits under § 502(a)(1) of ERISA, 29 U.S.C. § 1132(a)(1). In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id*. at 115. Where the plan does give discretionary authority, however, a court "reviews the administrator's decision to deny benefits using 'the highly deferential arbitrary and capricious standard of review.'" *Gismondi v. United Technologies Corp.*, 408 F.3d 295, 298 (6th Cir. 2005) (quoting *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (citing *Firestone Tire*, 489 U.S. at 115)). Here, plaintiff does not dispute

that the Plan grants the administrator discretionary authority, and that the arbitrary and capricious standard applies. Thus, in this summary judgment context, the court must "determine if there is any genuine issue of material fact whether the company's decision to deny benefits was arbitrary and capricious." *Id*. (internal quotation omitted).

The arbitrary and capricious "standard is extremely deferential and has been described as the least demanding form of judicial review." *McDonald v. Western-Southern Life Ins. Co.*, 367 F.3d 161, 172 (6th Cir. 2003). As the court explained in *Gismondi*:

> Under this deferential standard, we will uphold a benefit determination if it is rational in light of the plan's provisions. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious. Indeed, we must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants.

*Gismondi*, 408 F.3d at 298 (citations and internal quotations omitted). In conducting this review, the Court may consider only the evidence in the administrative record. *See Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 660 (6th Cir. 2004).

D.   *Analysis*

Here, the Court should conclude that the administrator's decision to deny benefits was not arbitrary and capricious. As noted above, the administrator's decision must be upheld so long as there is some evidence to support its decision, even if the evidence could equally support a contrary conclusion. There is sufficient medical evidence in the record to support the administrator's decision. Dr. Parker opined that plaintiff was capable of returning to work with restrictions. *See* AR, Tab 1. Dr. Johnson opined that plaintiff was unable to work in light of her current depressed condition, but also concluded that plaintiff should respond well to appropriate treatment, in particular with compliance with her psychiatric treatment. *See* AR, Tab 4. Similarly, Dr. Edmond

opined that plaintiff was not disabled because her treatment was ongoing and improvement could be anticipated, and because plaintiff's complaints were belied, at least in part, by plaintiff's physical examination. *See* AR, Tab 7. Based on this medical evidence, the administrator could rationally conclude that plaintiff did not meet the requirements of permanent and total disability under the Plan–to wit, that she be "totally disabled . . . so as to be prevented . . . from in engaging in regular employment or occupation with the Corporation" and that this disability be "permanent and continuous during the remainder of [her] life." Pension Agreement, § (8).

      Plaintiff offers a number of arguments to contradict this conclusion, each of which is without merit. First, plaintiff contends that Dr. Johnson's report is based on false information, namely that plaintiff was non-compliant with her psychiatric care and that plaintiff's depression and somatization of her pain symptoms is a major part of plaintiff's problem. Plaintiff contends that there is no evidence to support these assertions. However, Dr. Johnson was not the only physician to opine that plaintiff's psychiatric condition contributed to plaintiff's complaints, or that compliance with psychiatric treatment would provide improvement to plaintiff's condition. Drs. Parker and Edmond made similar observations. *See* AR, Tabs 1 & 7. Furthermore, Dr. Johnson's opinion was based on the history provided by plaintiff. *See* AR, Tab 4 (history section of report, stating plaintiff "[h]as seen a psychiatrist but not for months now.").

      Plaintiff also contends that Dr. Edmond issued her opinion before plaintiff's surgery. However, plaintiff submitted no additional evidence following her surgery upon which the administrator could judge Dr. Edmond's opinion that surgery, plus additional physical and psychiatric treatment, could be expected to improve plaintiff's condition. Indeed, Dr. Enam's report suggests that it was too early to tell, even as of the date of that report, whether plaintiff's surgery

7

(which apparently occurred shortly after Dr. Edmond prepared her report) would or would not help plaintiff's condition. *See* AR, Tab 10 ("Although this surgery *may* help some with pain control . . . ). Thus, although Dr. Enam reached a different conclusion on the ultimate question of plaintiff's disability, even Dr. Enam's report does not contradict Dr. Edmond's opinion that the surgery may improve plaintiff's condition.

Plaintiff also contends that the administrator's decision was arbitrary and capricious because it contradicted the opinions of plaintiff's three medical providers. At the outset, the conflict between the administrator's decision and the opinions of plaintiff's treating physicians is not as great as plaintiff makes out. While it is true that each doctor opined that plaintiff was totally and permanently disabled under the language of the Plan, each doctor hedged his or her opinion. For example, Dr. Suchak explained that plaintiff was "most likely" disabled, and noted that plaintiff was "still in the hands of pain clinic. Hopefully she can become a little more functional[.]" AR, Tab 3. Dr. Enam noted only that plaintiff's surgery would "not completely resolve her symptoms," but as noted above could not be sure as to the extent to which the surgery would alleviate plaintiff's pain. AR, Tab 10. Dr. Perez's report was based on Dr. Enam's report, and his conclusion that plaintiff is totally and permanently disabled was primarily based on the fact that she "just had major back surgery." Nothing in the report indicates that any consideration was given to how plaintiff's condition would be affected by the surgery and follow-up care. *See* AR, Tab 11.

More fundamentally, the differences of opinion between plaintiff's treating doctors and the examining physicians does not render the administrator's decision arbitrary and capricious. As the Supreme Court has explained, nothing in ERISA "suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened

burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). Thus, as the Seventh Circuit has explained, "[a]lthough [plaintiff's] treating physicians reached different conclusions as to her abilities, under an arbitrary and capricious review, neither this Court, nor the district court, will attempt to make a determination between competing expert opinions." *Semien v. Life Ins. Co. of N.A.*, ___ F.3d ___, ___, 2006 WL 267292, at *6 (7th Cir. Feb. 6, 2006); *see also*, *Richards v. Hartford Life & Accident Ins. Co.*, 153 Fed. Appx. 694, 697 (11th Cir. 2005) ("In choosing between the conflicting opinions of the treating and reviewing physicians, this Court might have made a different choice," but the court "could not say that the administrator abused his discretion by relying on the independent reviewing physician's opinion[.]").[1]

Plaintiff also contends that the administrator's decision is arbitrary and capricious because it was inconsistent with defendant's Summary Plan Description (SPD). Plaintiff contends that although the SPD states that employees are eligible for PTD Retirement if they are medically determined to be disabled, in reality the plan calls for the administrator to make this decision. Because she provided three medical opinions that she is disabled, plaintiff argues, the administrator's decision conflicts with the SPD. This argument, however, is simply plaintiff's treating physician argument in different clothes. *Adams v. Souther Labor Union Pension Fund*, No. 96-5943, 1997 WL 468323 (6th Cir. Aug. 13, 1997), upon which plaintiff relies, merely stands for

---

[1]*Williams v. International Paper Co.*, 227 F.3d 706 (6th Cir. 2000), upon which plaintiff relies, is not to the contrary. In that case, the court found the administrator's decision arbitrary and capricious because the administrator, contrary to the plan language, had wholly failed to consider the treating physician evidence submitted by the plaintiff. *See id.* at 712. Here, the record supports the conclusion that the administrator did consider the evidence submitted by plaintiff. *See* AR, Tabs 8 & 12.

the uncontroversial proposition that where a plan provision is not referred to in the SPD, "the provision may not be applied to bar the plaintiffs' claims for disability benefits if the plaintiffs relied upon, or were prejudiced by, the omission." *Id*. at \*4. Here, there is no evidence that the administrator relied on any plan provision not set forth in the SPD. The fact that the administrator did not adopt the opinions of plaintiff's treating physicians does not mean that the administrator applied a standard different from that set forth in the SPD. On the contrary, it is clear that the administrator made a determination as to plaintiff was "medically determined" to be disabled on the basis of medical evidence. Plaintiff merely disputes the medical evidence upon which the administrator based this decision. As noted above, this conflict in the evidence does not render the administrator's decision arbitrary and capricious.

Finally, plaintiff contends that because the company both funds and administers the Plan, there is a conflict of interest that the Court must take into consideration in applying the arbitrary and capricious standard, and that this conflict tips the scales in her favor. As the Sixth Circuit has explained, a "conflict of interest in self-funded plans does not alter the standard of review, but 'should be taken into account as a factor in determining whether . . . the decision was arbitrary and capricious.'" *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir. 1998) (quoting *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 694 (6th Cir. 1989)). While self-funding may raise a conflict of interest problem, however, plaintiff cannot show that there was a conflict in this case. First, "mere allegations of the existence of a structural conflict of interest are not enough; there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits." *Cochran v. Trans-General Life Ins. Co.*, 12 Fed. Appx. 277, 281 (6th Cir. 2001) (citing *Peruzzi*, 137 F.3d at 433). Here, plaintiff has presented no evidence that the panel

members had a financial stake in the plan, or that the Plan was motivated by cost in rejecting her claim. *See Peruzzi*, 137 F.3d at 433. Rather, she again takes issue with the administrator's evaluation of the evidence, but this does not demonstrate that a conflict of interest affected the administrator's decision.

More importantly, there is no evidence of an actual conflict in this case. Although DaimlerChrysler funds the plan, the administrator is a separate board composed of three members each of the corporation and the union, as well as an impartial chairman. In light of this equal representation, and the fact that "[t]he union trustees, at least, have no discernible incentive to rule against an applicant," there is no conflict which alters the arbitrary and capricious standard of review. *Manny v. Central States, S.E. & S.W. Areas Pension & Health & Welfare Funds*, 388 F.3d 241, 243 (7th Cir. 2004). In light of the composition of the Board, and the absence of any evidence that the Board was motivated to deny plaintiff benefits based on any conflict of interest, the Court should reject plaintiff's argument and conclude that the administrator's decision was not arbitrary and capricious.

E.   *Conclusion*

In short, this is a case in which the evidence in the record could support a finding that plaintiff both was or was not permanently and totally disabled under the Plan. While plaintiff contends that the administrator should have accepted the opinions of her medical providers over those of the examining physicians, "under an arbitrary and capricious standard [this Court will not] attempt to make a determination between competing expert opinions." *Semien*, ___ F.3d at ___, 2006 WL 267292, at *6. As the Sixth Circuit has explained,

> when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits,

the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.

*McDonald*, 347 F.3d at 169.  Here, the opinions of Drs. Johnson, Parker, and Edmond provide a reasoned basis for the administrator's decision notwithstanding the conflicting opinions of plaintiff's treating physicians, and the administrator's decision therefore survives this Court's arbitrary and capricious review.  *See Semien*, ___ F.3d at ___, 2006 WL 267292, at \*5-\*6; *Steele v. Boeing Co.*, 399 F. Supp. 2d 628, 637-38 (E.D. Pa. 2005).  Accordingly, the Court should grant defendant's motion for summary judgment.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically,

> the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.

*McDonald*, 347 F.3d at 169.  Here, the opinions of Drs. Johnson, Parker, and Edmond provide a reasoned basis for the administrator's decision notwithstanding the conflicting opinions of plaintiff's treating physicians, and the administrator's decision therefore survives this Court's arbitrary and capricious review.  *See Semien*, ___ F.3d at ___, 2006 WL 267292, at *5-*6; *Steele v. Boeing Co.*, 399 F. Supp. 2d 628, 637-38 (E.D. Pa. 2005).  Accordingly, the Court should grant defendant's motion for summary judgment.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically,

and in the same order raised, each issue contained within the objections.

                                                          s/Paul J. Komives
                                                          PAUL J. KOMIVES
                                                          UNITED STATES MAGISTRATE JUDGE

Dated:2/14/06

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 14, 2006.
>
>                               s/Eddrey Butts
>                               Case Manager